## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN VINCENT WATERS,** | : | **Civil No. 1:22-cv-448** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **BERNADETTE MASON,** | : | |
| **Superintendent, et al.,** | : | |
| | : | |
| **Respondents.** | : | |
| | : | |

## MEMORANDUM OPINION[1]

### I.   Introduction

In 1982, John Waters committed a hideous crime, sexually assaulting and murdering an eleven-year-old boy. Waters was himself a youth at the time of this murderous sex crime, as he was sixteen years of age. Initially sentenced to life imprisonment without the possibility of parole, Waters obtained a re-sentencing in 2017 following United States Supreme Court decisions setting aside mandatory life sentences for juvenile killers like Waters.

While this resentencing provided Waters with all the relief he was constitutionally entitled to receive, the petitioner now seeks to have this lesser

---

[1] We exercise plenary jurisdiction of this petition pursuant to 28 U.S.C. §636 pursuant to the consent of all parties. (Doc. 21).

sentence set aside based upon his novel and eccentric beliefs that the Pennsylvania courts are now essentially powerless to further punish him for the horrific crimes he committed.

We disagree.

Pending before the court is a petition for writ of habeas corpus filed by John Waters. In 1982, when he was sixteen years old, Waters was convicted by a jury of first-degree murder and involuntary deviate sexual intercourse ("IDSI") stemming from the brutal sexual assault and murder of his eleven-year-old neighbor, Stephen Turner. Waters was sentenced to life imprisonment without the possibility of parole for the murder and received a concurrent sentence of 4 to 10 years for IDSI. Following the United States Supreme Court's decisions in <u>Miller v. Alabama</u>, 567 U.S. 460 (2012), and <u>Montgomery v. Louisiana</u>, 577 U.S. 190 (2016), which rendered life without parole sentences for juvenile offenders unconstitutional, Waters was resentenced in 2017 to a term of 35 years to life imprisonment, with a consecutive sentence of 4 to 10 years for his IDSI conviction.

Waters now asserts that his resentencing was unconstitutional, in that his sentence violates Due Process, the Pennsylvania Constitution, and the separation of powers. After consideration, we find that Waters' claims are without merit. Accordingly, we will deny this petition.

II.    <u>**Statement of Facts and of the Case**</u>

The factual background of the instant case was aptly summarized by the Pennsylvania Superior Court in its decision affirming Waters' initial conviction and sentence:

> On October 14, 1981, the body of an eleven year old boy, Steven Turner, was found stabbed and bludgeoned to death in an abandoned farm house within a mile of his home in Cumberland County, Pennsylvania. The body, covered by stones and boards, was discovered in the evening as a result of a search for the boy which commenced when he did not come home for dinner.
>
> An autopsy revealed that the 4 foot 9 inch, 80 pound sixth grader had died as a result of multiple head injuries. He had sustained a massive fracture of the skull from blows to the back and the side of the head, a broken jaw on each side of the face, a stab wound to the back of the neck and a stab wound to the back of the chest. He had also been subjected to a post-mortem incise wound on the right wrist and stab wound in the front of the neck. The blade of a knife, with its handle broken off, was left in the victim's neck. The autopsy report also indicated that sperm was present in the victim's mouth.
>
> The appellant, John Vincent Waters, a 152 pound, sixteen year old, 5 foot 8 inch high school student told police during an original canvass of the neighborhood, that he had last seen the victim on the afternoon he disappeared. He told the police that he had observed the victim getting into an unknown car which subsequently drove out of the development.
>
> As a result of a further canvass of the neighborhood, the police obtained a steak knife from the appellant's mother. The knife which she had in her house matched the one found at the murder scene including the blade which had been left in the victim's throat.
>
> On October 25, 1981, the police requested that the appellant and his father report to the municipal building for questioning concerning the homicide. The appellant was given the Miranda warnings in the

presence of his father. Thereafter he and his father consulted with each other. The appellant waived his rights and agreed to speak to the police without having his father present. His father had no objection to such an interrogation.

During the course of the questioning, the appellant made an inculpatory statement, admitting that he had engaged in oral intercourse with the victim and then had killed him.

Commonwealth v. Waters, 483 A.2d 855, 857-58 (Pa. Super. Ct. 1984).

Waters was convicted by a jury of IDSI in May of 1982, but the jury was unable to reach a verdict on the murder charge. Id. at 857. Following a second trial in September of 1982, Waters was convicted of first-degree murder. Id. Waters was then sentenced to life imprisonment without the possibility of parole for the murder and a concurrent term of 4 to 10 years for IDSI. Id. The Superior Court affirmed his conviction and sentence on October 12, 1984, and the Pennsylvania Supreme Court denied allocatur on February 14, 1985. Waters filed a petition for certiorari to the United States Supreme Court, and his petition was denied on June 3, 1985.

Waters then filed a petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 et seq., on July 14, 2010, arguing that his sentence of life imprisonment without the possibility of parole was unconstitutional under Graham v. Florida, 560 U.S. 48 (2010), which held that life without parole sentences for juvenile offenders who did not commit homicide were unconstitutional. However, the PCRA court dismissed Waters' petition as untimely on December 13, 2010, noting that Graham did not apply to Waters, as he had been

4

convicted of first-degree homicide. (Doc. 14-2, at 55-57). On appeal, Waters again raised the <u>Graham</u> case as an avenue for sentencing relief, as well as claims that his life without parole sentence violated both the Eighth Amendment to the United States Constitution and the Pennsylvania Constitution. (<u>Id.</u>, at 78-79). On August 16, 2011, the Superior Court affirmed the PCRA court's decision holding that the petition was untimely. (<u>Id.</u> at 77-82). The Pennsylvania Supreme Court denied allocatur on November 22, 2011. (<u>Id.</u>, at 84).

Following the Supreme Court's decision in <u>Miller</u>, Waters filed a second PCRA petition on July 3, 2012, and an amended counseled petition on October 12, 2016, after <u>Montgomery</u> rendered <u>Miller</u> retroactive. Waters' PCRA petition was granted on February 2, 2016, finding that <u>Miller</u> and <u>Montgomery</u> constituted a "new constitutional right" exception to the PCRA's time bar. Subsequently, the trial court held resentencing hearings on November 13 and December 4, 2017, and Waters was resentenced to a term of 35 years to life with the possibility of parole for the murder and a consecutive term of 4 to 10 years for IDSI. Waters filed a motion to modify his sentence arguing that the consecutive 4-to-10-year term violated the Double Jeopardy clause, and this motion was denied by the trial court on December 15, 2017. (Doc. 14-2, at 86).

Waters then filed an appeal of the trial court's resentencing. While he was appointed counsel, who filed a statement pursuant to Pa. R.A.P. 1925(b), Waters

also filed his own *pro se* 1925(b) statement, as well as a request to proceed *pro se*. Ultimately, Waters retained new counsel, who filed an amended 1925(b) statement, after which the trial court filed its 1925(a) opinion recommending that Waters' sentence be upheld. Waters' arguments on appeal challenged the consecutive term of 4 to 10 years for IDSI, as well as the trial court's jurisdiction to impose the 35-years-to-life sentence for his murder conviction. The Superior Court ultimately upheld Waters' sentence, and the Pennsylvania Supreme Court denied allocatur on March 24, 2021.[2] (Doc. 14-4, at 35-49, 61). On May 24, 2021, the Superior Court vacated its order imposing the costs of prosecution on Waters but affirmed his sentence in all other respects. (Id., at 51-59).

While Waters' appeal of his resentencing was pending, he filed a petition for habeas corpus with this court on July 3, 2018. Waters v. Delbalso, et al., Civ. No. 18-CV-1333. The district court ultimately dismissed Waters' petition as premature because he had not yet exhausted his administrative remedies. Following the conclusion of his state court appeals, on March 24, 2022, Waters filed the instant habeas petition. (Doc. 1).

Waters' petition raises several grounds for habeas relief. First, he asserts that the term "life imprisonment" set forth in 18 Pa. Cons. Stat. § 1102(a) is void as

---

[2] The Pennsylvania Supreme Court granted allocatur as to the sole issue of the costs of prosecution being borne by the defendant. However, it denied allocatur as to the substantive issues set forth by Waters.

applied to him, and because of an ambiguity in the term, the sentencing court had no jurisdiction to sentence him. Second, he claims that the resentencing regime following <u>Miller</u> violates Pennsylvania's separation of powers. Finally, he asserts that his new sentence of 35 years to life and a consecutive 4 to 10 years for IDSI violates Due Process, the rule of lenity, and the law of the case doctrine. Much of Waters' arguments revolve around the Pennsylvania courts' application of <u>Commonwealth v. Batts</u>, 163 A.3d 410 (Pa. 2017) (<u>Batts II</u>), which held that after <u>Miller</u>, a juvenile offender could still be sentenced to a maximum sentence of life imprisonment so long as that sentence was accompanied by a minimum sentence.

For their part, the respondents assert that Waters' petition is untimely, and that his claims have not been fully and properly exhausted in the state courts. Moreover, they contend that his claims are without merit. After review of the petition and the underlying state court record, we find that even if Waters' claims are considered timely and fully exhausted, his claims are without merit. Accordingly, we will deny Water's petition.

## III.   Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

#### (1) Substantive Standards

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State;
> ..........
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401–02 (3d Cir. 2004).

### (2) Deference Owed to State Courts

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1)

9

"contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. § 2254(d)(l); or (2) was "based upon an unreasonable determination of the facts," <u>see</u> 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See <u>Rice v. Collins</u>, 546 U.S. 333, 338–39 (2006); <u>see also</u> <u>Warren v. Kyler</u>, 422 F.3d 132, 139–40 (3d Cir. 2006); <u>Gattis v. Snyder</u>, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. <u>See</u> 28 U.S.C. § 2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. <u>See, e.g.</u>, <u>Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (per curiam); <u>Demosthenes v. Baal</u>, 495 U.S. 731, 734–35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. <u>Rolan v. Vaughn</u>, 445 F.3d 671 (3d Cir.2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. <u>Weeks v. Snyder</u>,

219 F.3d 245, 258 (3d Cir. 2000). Accordingly, in a case such as this, where a state

court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, ..., will not be
> overturned on factual grounds unless it was objectively unreasonable in
> light of the evidence presented in the state proceeding. Miller–El v.
> Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). We
> must presume that the state court's determination of factual issues was
> correct, and the petitioner bears the burden of rebutting this
> presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);
> Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir.2000).

Rico v. Leftridge–Byrd, 340 F.3d 178, 181 (3d Cir. 2003). Applying this standard of

review, federal courts may only grant habeas relief whenever "[o]ur reading of the

PCRA court records convinces us that the Superior Court made an unreasonable

finding of fact." Rolan, 445 F.3d at 681.

### (3) Procedural Benchmarks – Statute of Limitations, Exhaustion, and Procedural Default

#### a. Statute of Limitations

Furthermore, state prisoners seeking relief under Section 2254 must also

satisfy specific, and precise, procedural standards. Among these procedural

prerequisites is a requirement that petitioners timely file motions seeking habeas

corpus relief. The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2244, established a one-year statute of limitations on the

filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1) provides

as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d), prescribes several forms of statutory tolling. First, with respect to tolling based upon a petitioner's direct appeal of his conviction: "The limitation period shall run from the latest of- (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The courts have construed this tolling provision in a forgiving fashion, and in a manner that enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct

appellate review of their cases, even if they did not, in fact, elect to seek such review. Thus, with respect to direct appeals, the statute of limitations is tolled during the period in which a petitioner could have sought discretionary appellate court review, by way of allocator or through a petition for writ of certiorari, even if no such petition is filed. Jimenez v. Quarterman, 555 U.S. 113, 119, 129 S. Ct. 681, 685, 172 L.Ed. 2d 475 (2009). After this period of time passes, however, by statute the judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1)(A).

28 U.S.C. § 2244(d)(2), in turn, prescribes a second period of statutory tolling requirements while state prisoners seek collateral review of these convictions in state court, and provides that:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

### b.  Exhaustion of State Remedies

State prisoners seeking relief under section 2254 must also satisfy specific, additional procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court.  28 U.S.C. § 2254(b).  In instances where a state prisoner has failed to exhaust the legal remedies available to him in the

state courts, federal courts typically will refuse to entertain a petition for habeas corpus.  <u>Whitney v. Horn</u>, 280 F.3d 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844 (1999). The Supreme Court has explained that "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation.  <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982).  Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid a federal court in its review of § 2254 petitions.  <u>Walker v. Vaughn</u>, 53 F.3d 609, 614 (3d Cir. 1995).  A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. <u>Evans v. Court of Common Pleas</u>, 959 F.2d 1227, 1231 (3d Cir. 1992); <u>Santana v. Fenton</u>, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in obtaining state relief, since it is well-settled that a claim of "likely futility on the merits does not

excuse failure to exhaust a claim in state court." <u>Parker v. Kelchner</u>, 429 F.3d 58, 63 (3d Cir. 2005).

Although this exhaustion requirement compels petitioners to have previously given the state courts a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional clams. <u>Evans</u>, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligation by fairly presenting a claim to state courts, even if the state courts decline to address that claim. <u>Dye v. Hofbauer</u>, 546 U.S. 1 (2005) (per curiam); <u>Johnson v. Pinchak</u>, 392 F.3d 551, 556 (3d Cir. 2004).

### c.  **Procedural Default**

A necessary corollary of this exhaustion requirement is the procedural default doctrine, which applies in habeas corpus cases. Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim. In such instances:

In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted . . . .

If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play.  A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule.  Federal courts may not consider the merits of a procedurally defaulted claim unless the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).

<u>Carpenter v. Vaughn</u>, 296 F.3d 138, 146 (3d Cir. 2002).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.'  This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural ground.'" <u>Hubbard v. Pinchak</u>, 378 F.3d 333, 338 (3d Cir. 2004) (citations omitted).  Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined.  Thus, for purposes of excusing a procedural default of a state prisoner seeking federal

16

habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default:  the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000) (citations omitted).  Similarly, when examining the second component of this "cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at … trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  In the context of an ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

Id. at 193 (citations omitted).

Likewise, the "miscarriage of justice" exception to this procedural bar rule is also narrowly tailored, and requires a credible assertion of actual innocence to justify a petitioner's failure to comply with state procedural rules. Hubbard, 378 F.3d at 338.

Procedural bar claims typically arise in one of two factual contexts.  First, in many instances, the procedural bar doctrine is asserted because an express state court

ruling in prior litigation denying consideration of a habeas petitioner's state claims on some state procedural ground.  In such a situation, courts have held that:

> A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."  Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).  For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed."  Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on it, Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996), because a petitioner is entitled to notice of how to present a claim in state court.

Taylor v. Horn, 504 F.3d 416, 427-28 (3d Cir. 2007). (citing Ford, 498 U.S. at 423-24).

In other instances, the procedural default arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules.  In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally.  See, e.g., Johnson v. Pinchak, 392 F.3d 551 (3d Cir. 2004) (procedural default where petitioner failed to timely pursue state claim); Hull v. Freeman, 991 F.2d 86 (3d Cir. 1993)

(same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice."

It is against these legal benchmarks that we assess Waters' petition.

### B. **This Petition Will Be Denied.**

As we have explained, Waters' petition asserts three grounds for relief. He claims that the Pennsylvania statute under which he was originally sentenced to life without parole, 18 Pa. Cons. Stat. § 1102(a), is void as applied to him, as the definition of "life imprisonment" is now ambiguous following <u>Miller</u>. He further asserts that his resentencing violated Pennsylvania's separation of powers structure, as well as Due Process, the rule of lenity, and the law of the case. However, as we will explain, while we find that, liberally construed, Waters' petition is timely and his claims have been exhausted, his claims fail on their merits. Accordingly, this petition will be denied.

### (1) **Waters' Petition is Timely.**

At the outset, the respondents assert that Waters' petition is untimely and outside of AEDPA's one-year statute of limitations. They contend that Waters' petition attempts to challenge the 1984 opinion of the Superior Court which affirmed his conviction and sentence, and the 2010 PCRA opinion. We agree that, to the

extent Waters is challenging these decisions, the petition would be untimely, as these decisions became final in 1985 and 2011, respectively, and are thus time barred. However, we read Waters' petition as challenging aspects of his resentencing that occurred in December of 2017.

On this score, the Supreme Court of the United States has spoken to the issue of finality for statute of limitations purposes, holding that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." Burton v. Stewart, 549 U.S. 147, 156 (2007) (quoting Berman v. United States, 302 U.S. 211, 212 (1937)). Indeed, the respondents concede in the instant case that claims arising out of Waters' resentencing are not untimely. (Doc. 14-1, at 8-9). Although Waters references the law of the case, as well as the 1984 Superior Court decision upholding his original conviction and sentence, we read Waters' petition as challenging several aspects of his resentencing, as well as Pennsylvania's remedial legislature following the Miller decision, which were raised in his state court appeals following his resentencing in December of 2017.

Thus, because Waters' sentence which he now challenges became final on May 24, 2021, when the Pennsylvania Supreme Court denied allocatur, and Waters filed the instant habeas petition on March 24, 2022, we find that his petition is timely.

### (2) Waters' Claims have been Exhausted.

The respondents next assert that Waters has not exhausted his claims in the state courts. Federal courts typically require a fully and complete round of appeals before a claim is deemed exhausted. See O'Sullivan, 526 U.S. at 844-45 (1999) (finding that a petitioner properly exhausts claims in state court "by invoking one complete round of the State's established appellate review process"); Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000) ("Petitioners who have not fairly presented their claims to the highest state court have failed to exhaust those claims"); Evans, 959 F.2d at 1230 ("A claim must be presented not only to the trial court but also the state's intermediate court as well as to its supreme court"); Blasi v. Atty. Gen. of Pa., 30 F.Supp.2d 481, 486 (M.D. Pa. 1998) ("The exhaustion doctrine requires the defendant to present the issue to any intermediate state appellate court, if applicable, and to the state's supreme court"). However, in light of the Pennsylvania Supreme Court's Order No. 218, which expressly allows petitioners to forego state Supreme Court review of legal claims exhausted in the Superior Court, it has been held that "Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c)." Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

Here, the claims Waters raises revolve around his resentencing, as well as the Pennsylvania legislation put into place following Miller which essentially redefined

what "life imprisonment" meant for juvenile offenders. Waters raised these claims on appeal to the Superior Court following his resentencing. (Doc. 14-4, at 35-49). Specifically, Waters contested the trial court's authority and jurisdiction to resentence him to 35 years to life on the murder conviction, as well as the consecutive 4-to-10-year sentence imposed for IDSI. (Doc. 14-3, at 10). Liberally construing Water's *pro se* petition, we find that Waters' claims that he now raises in this habeas petition were fairly presented to the state courts such that they were properly exhausted.

### (3) <u>Waters' Claims are Without Merit.</u>

While we find that Waters' petition is both timely and properly exhausted, we conclude that his claims are without merit and will deny this petition for habeas corpus.

First, with respect to his claim that as a matter of state law his resentencing violated Pennsylvania's separation of powers, we conclude that this claim is not cognizable on habeas review. On this score, Waters contends that following <u>Miller</u>, the Pennsylvania Supreme Court's holding in <u>Commonwealth v. Batts</u>, 163 A.3d 410 (Pa. 2017) ("<u>Batts II</u>"), which set forth the resentencing regime for defendants like Waters who were convicted of murder as juveniles prior to 2012, violated the separation of powers because the legislature had not enacted any statute that applied to this specific class of offenders. Indeed, following <u>Miller</u>, the Pennsylvania

22

legislature's revised penalty statute only applied to individuals convicted after June 24, 2012. See 18 Pa. Cons. Stat. § 1102.1(a). The Batts II court recognized this dilemma with respect to pre- and post-Miller juvenile offenders and subsequently held that Miller did not preclude the imposition of a maximum term of life imprisonment for a juvenile offender convicted of first-degree murder so long as it was accompanied by a minimum sentence. Batts II, 163 A.3d at 420-21. Accordingly, Batts II set forth a sentencing scheme for those juveniles convicted of first-degree murder prior to June 24, 2012, directing that courts be guided by §1102.1(a) when resentencing a juvenile convicted of first-degree murder prior to 2012:

> This aligns with the current expression of legislative intent for the sentencing of juveniles convicted of first-degree murder. Section 1102.1(a) requires the imposition of a mandatory minimum sentence for juveniles convicted of first-degree murder. Subsection (e) makes clear that this is only the minimum sentence required, stating, "Nothing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section." 18 Pa.C.S. § 1102.1(e). In determining the minimum sentence for a juvenile convicted of first-degree murder prior to Miller, a sentencing court is to exercise its discretion to find the appropriate, individualized sentence in each case, just as it would when fashioning the minimum sentence for any other defendant before it.

Batts II, 163 A.3d at 456.

One court in this circuit recently addressed a virtually identical claim to the one Waters' presents here—that this sentencing scheme violates the separation of

powers. In holding that such a separation of powers claim was not cognizable in federal habeas, the court stated:

> Sourbeer's argument appears to be that permitting the <u>Batts</u> court to determine the punitive scheme for juveniles sentenced for first-degree murder before 2012 violates the separation of powers doctrine. However, the United States Supreme Court has ruled that the doctrine of separation of powers embodied in the federal constitution is not mandatory on the states. <u>Whalen v. United States</u>, 445 U.S. 684 at n.4 (1980), citing <u>Dreyer v. Illinois</u>, 187 U.S. 71, 84 (1902).
>
> Thus, any challenge to the Pennsylvania courts' reliance upon <u>Batts II</u> in the absence of a "statutory provision" does not raise an issue of federal law which can be addressed in a habeas corpus petition. 28 U.S.C. § 2254(a); <u>Estelle [v. McGuire</u>, 502 U.S. 62, 68 (1991)]. It was for this reason that the identical separation of powers argument Sourbeer raises here was rejected as non-cognizable in <u>Brome v. Ransom</u>, Civ. A. No. 20-2509, 2021 WL 7451155 (E.D. Pa. July 26, 2021), <u>report and recommendation adopted</u> 2022 WL 768152 (E.D. Pa. Mar. 14, 2022) at *6. It is similarly non-cognizable here.

<u>Sourbeer v. Ferguson</u>, 2022 WL 2346967, at *5 (E.D. Pa. May 25, 2022); <u>see also</u> <u>Taylor v. May</u>, 2022 WL 980859, at *14 (D. Del. March 31, 2022) (holding that a state separation of powers claim was not cognizable on habeas review). We similarly find that this state separation of powers claim is not cognizable here and does not afford Waters habeas relief.

Waters also challenges the legality of his resentencing to 35 years to life imprisonment. Waters' claim on this score essentially argues that the definition of "life imprisonment" in 18 Pa. Cons. Stat. § 1102(a), under which he was sentenced to life without parole prior to <u>Miller</u>, is now unconstitutionally ambiguous following

<u>Miller</u> and Pennsylvania's enactment of § 1102.1 in conjunction with <u>Batts I</u> and <u>Batts II</u>. He asserts that because there is now an ambiguity in the definition of "life imprisonment" as defined by Pennsylvania statutes, such an ambiguity violates the Pennsylvania Constitution. (Doc. 19, at 23). Thus, he argues that the sentencing court did not have jurisdiction or authority to resentence him in 2017 to a term of 35 years to life imprisonment.

At the outset, we note that state court determinations regarding substantive state law are not cognizable on federal habeas review. As we have previously explained, "a state inmate who has received a sentence within the limits prescribed by state law cannot state a claim for federal habeas relief unless that sentence itself violates federal law." <u>Hollway v. Bush</u>, 2019 WL 2323821, at *13 (M.D. Pa. April 10, 2019) <u>report and recommendation adopted</u> 2019 WL 2296527 (M.D. Pa. May 30, 2019) (citations omitted). Indeed, it is well settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Accordingly, to the extent Waters is challenging the length of his sentence of 35 years to life under Pennsylvania law, this claim is not cognizable on habeas review.

Further, the Superior Court addressed Waters' claim in its decision affirming his conviction and sentence in 2019, holding that the sentencing court did, in fact, have jurisdiction to resentence Waters:

Here, Appellant was convicted of first-degree murder and sentenced to life without the possibility of parole in 1983. Appellant was ultimately resentenced in 2017, following <u>Miller</u>, <u>Montgomery</u>, and <u>Batts II</u>, to 35 years to life imprisonment for his first-degree murder conviction.

We find that <u>Batts II</u> disproves Appellant's contention that the sentencing court lacked authority to impose a term of 35 years to life imprisonment for first-degree murder. <u>Batts II</u> explicitly directed court to use 18 Pa.C.S.A. § 1102.1 as a guideline for resentencing juvenile offenders. Further, the Pennsylvania Constitution gives the Pennsylvania Supreme Court "the power to prescribe general rules governing practice, procedure and the conduct of all courts as long as such rules neither abridge, enlarge nor modify the substantive rights of any litigant[.]" <u>Batts II</u>, 163 A.3d at 449 (quoting Pa. Const. art. V, § 10). Thus, the trial court had the authority to resentence Appellant pursuant to <u>Batts II</u>. Further, <u>Batts II</u> required the court to sentence Appellant to a mandatory maximum of life imprisonment. <u>See id.</u> at 458. <u>See also</u> <u>Commonwealth v. Seskey</u>, 170 A.3d 1105, 1109 (Pa. Super. Ct. 2017). Accordingly, we find Appellant is not entitled to relief on this claim.

(Doc. 14-4, at 48).

Accordingly, to the extent Waters urges us to revisit this decision of substantive state law by the Superior Court, we will decline such an invitation. Moreover, to the extent Waters asserts that his sentence is violative of federal law and Due Process, we note that following <u>Miller</u>, numerous courts have had occasion to examine whether the resentencing of juvenile offenders to serve a minimum sentence of a term of years under an indeterminate sentencing system violates the Constitution. Those courts have consistently held that such sentences are wholly in accord with <u>Miller</u> and do not violate the defendant's constitutional rights, provided that the length of these sentences are not tantamount to life in prison without the

possibility of parole. <u>See e.g.</u>, <u>Sourbeer</u>, 2022 WL 2346967, at *6-7; <u>Gonzalez v.</u>
<u>District Attorney of Berks Cnty.</u>, 2020 WL 8835431, at *9 (E.D. Pa. Aug. 31, 2020);
<u>McCain v. Frakes</u>, No. 8:18-CV-190, 2019 WL 2086001, at *3 (D. Neb. May 13,
2019); <u>Jensen v. Young</u>, No. 4:18-CV-04041-RAL, 2019 WL 653062, at *8 (D.S.D.
Feb. 15, 2019); <u>Garza v. Frakes</u>, No. 8:17-CV-474, 2018 WL 1710183, at *4 (D.
Neb. Apr. 9, 2018).

Further to the extent Waters' challenges the imposition of a consecutive term
of 4 to 10 years for his IDSI conviction, this claim was addressed by the Superior
Court's decision affirming Waters' resentencing:

> Resentencing to correct an illegal sentence does not, in and of itself,
> implicate double jeopardy. <u>See</u> <u>Commonwealth v. Kratzer</u>, 660 A.2d
> 102 (Pa. Super. 1995). "If a trial court errs in its sentence on one count
> in a multi-count case, then all sentences for all counts will be vacated
> so that the court can restructure its entire sentencing scheme."
> <u>Commonwealth v. Bartrug</u>, 732 A.2d 1287, 1289 (Pa. Super. 1999).
> Here, Appellant intentionally upset the finality of his judgment of
> sentence by challenging it collaterally through his PCRA petition. We
> conclude that the PCRA court did not err in vacating Appellant's entire
> sentence before resentencing, rather than just the illegal sentence for
> Appellant's first-degree murder conviction. <u>See id.</u> Additionally, as the
> trial court noted, "it was wholly appropriate for the court to resentence
> [Appellant] on both charges regardless of the structure of the original
> sentence." Trial Court Opinion, fled 5/30/18, at 6.
>
> Moreover, we note that, despite the imposition of consecutive sentences
> upon resentencing, Appellant was resentenced to a lower aggregate
> term of incarceration. For instance, in 1983, Appellant was sentenced
> to an aggregate of life in prison without the possibility of parole;
> however, upon resentencing in 2017, Appellant was sentenced to an
> aggregate of 39 years to life with the possibility of parole. Thus, under

> such circumstances, we reject Appellant's claim that a double jeopardy
> violation occurred.

(Doc. 14-1, at 39-40) (footnotes omitted). The court also noted the trial court's view

that, "given the mandatory sentence of life without parole, there was no reason in

198[3] for the sentencing court to structure a sentence with anything other than a

concurrent sentence on the IDSI charge." (Id., at n. 2).

Here, Waters was resentenced to a term of 35 years to life with the possibility

of parole for his first-degree murder conviction and a consecutive sentence of 4 to

10 years for IDSI, resulting in an aggregate sentence of 39 years to life with the

possibility of parole. Thus, Waters has received precisely the relief contemplated by

Miller and its progeny. While Waters' memorandum in support of his petition makes

much of the definition of the term "life imprisonment" and the historical connotation

of that term prior to Miller and as set forth by §1102(a), Waters' argument wholly

ignores an immutable fact—he is no longer serving an unconstitutional sentence of

life imprisonment without the possibility of parole.[3] Accordingly, these claims do

not afford Waters federal habeas relief.

---

[3] Because Waters' arguments regarding the rule of lenity and the law of the case
doctrine both appear to hinge on the definition of "life imprisonment" in § 1102(a)
prior to Miller, we conclude that neither of these doctrines are applicable to Waters'
case, as Waters is no longer serving a sentence of life imprisonment without the
possibility of parole.

Finally, we have carefully considered whether Waters is entitled to a certificate of appealability under 28 U.S.C. § 2253. As the Supreme Court observed "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, (2000). Here, we conclude that Waters has made no such showing, nor can he in light of the state court findings and clear evidence of his factual guilt. Simply put, we believe that no reasonable jurist could now find that the state courts are utterly without jurisdiction in this case and are therefore powerless to punish Waters for his sexual abuse and murder of an eleven-year-old child. Accordingly, a certificate of appealability will not issue in this case.

## IV. <u>Conclusion</u>

Accordingly, for the foregoing reasons, the petition for a writ of habeas corpus in this case will be DENIED, and that a certificate of appealability will not issue.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: March 16, 2023